**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CENTER FOR BIOLOGICAL ) | |
| DIVERSITY, NATURAL RESOURCES ) | |
| DEFENSE COUNCIL, and ANIMAL ) | |
| WELFARE INSTITUTE, ) | Docket No. _____ |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| NATIONAL MARINE FISHERIES ) | Jury Trial? |
| SERVICE, ) | |
| ) | __ Yes  X No |
| Defendant. ) | |

**COMPLAINT FOR INJUNCTIVE RELIEF**

**INTRODUCTION**

1.      Plaintiffs Center for Biological Diversity, Natural Resources Defense Council,

and Animal Welfare Institute bring this case under the Freedom of Information Act ("FOIA"), 5

U.S.C. § 552, to compel the National Marine Fisheries Service ("NMFS") to disclose requested

applications submitted by several nations pursuant to the Marine Mammal Protection Act Import

Rule ("MMPA Import Rule"). 50 C.F.R. § 216.24(h)(6).

2.      Each year around the world, more than 650,000 dolphins, whales, seals, and other

marine mammals die or are seriously injured in fishing gear. Ensnared in nets, wrapped in

fishing lines, or snagged on fishing hooks, these creatures are "bycatch" of commercial fisheries

targeting swordfish, tuna, other finfish, shrimp, lobster, and crab. Bycaught marine mammals

most commonly either drown or are tossed overboard to die.

3.      Bycatch from fishing poses the most significant global risk to marine mammal

conservation and threatens the very existence of some of the world's most charismatic species,

including the endangered North Atlantic right whale, Mexico's critically imperiled vaquita, bottlenose dolphins off South America, and spinner dolphins in the Indian Ocean.

4.     The United States imports approximately 70 to 85 percent of the seafood Americans consume—more than 6.1 billion pounds each year, nearly half of which is wild-caught. These finfish and shellfish are harvested from around the world and imported into the lucrative U.S. market from more than 100 nations.

5.     The Marine Mammal Protection Act ("MMPA"), enacted in 1972, sets high standards for U.S. domestic fisheries to reduce and eliminate bycatch. To reduce bycatch in foreign fisheries that supply the U.S. seafood market, the MMPA requires the U.S. government to ban the import of fish and fish products caught in foreign fisheries that kill or injure marine mammals "in excess of United States standards." 16 U.S.C. § 1371(a)(2).

6.     To implement this statutory provision, NMFS published the MMPA Import Rule, which established requirements and an evaluation system for determining whether imported fish and fish products meet U.S. bycatch standards. 81 Fed. Reg. 54,389 (Aug. 15, 2016), codified at 50 C.F.R. §§ 216.24(h)(6)(iii), 216.24(h)(7).

7.     The MMPA Import Rule prohibits the importation of commercial fish and fish products into the United States from foreign fisheries unless NMFS has issued a comparability finding for that fishery. 50 C.F.R. §§ 216.24(h)(1), 216.3. As originally promulgated, the rule was to take effect following a five-year exemption period to facilitate nations' compliance, and NMFS was to issue comparability findings by November 30, 2021. *See* 50 C.F.R. §§ 216.3 (as effective on January 1, 2017), 216.24(h)(2)(ii), 216.24(h)(6)(ii); 81 Fed. Reg. 54,390, 54,391 and 54,417. Nations were required to submit comparability applications demonstrating that their export fisheries meet the Rule's requirements by March 1, 2021. *See* 50 C.F.R. § 216.24(h)(6)(i)

2

(as effective on January 1, 2017); 81 Fed. Reg. 54,390, 54,393. In 2020, NMFS extended the date nations' comparability applications were due from March 1, 2021, to November 30, 2021. 50 C.F.R. § 216.24(h)(6)(i); 85 Fed. Reg. 69,515 (Nov. 3, 2020).

8.   Through the issuance of additional interim final rules and final rules, NMFS has granted itself multiple extensions of the exemption period, which now runs until December 31, 2025. *See* 85 Fed. Reg. 69,515 (Nov. 3, 2020); 87 Fed. Reg. 63,955 (Oct. 21, 2022); 88 Fed. Reg. 80,193 (Nov. 17, 2023). During these extension periods, imports from nearly all foreign nations will continue notwithstanding that imported fish and fish products may not meet U.S. bycatch standards.

9.   Plaintiffs submitted a FOIA request for eleven nations' comparability applications and related materials on February 24, 2022.

10.   Between June 9, 2022, and January 13, 2023, NMFS issued five "interim" and ultimately incomplete releases of records in response to Plaintiffs' request.

11.   NMFS unlawfully withheld or redacted more than 600 records from its releases.

12.   NMFS asserts a number of exemptions to justify its withholding or redactions that do not apply to the records sought.

13.   NMFS has failed to provide documents responsive to Plaintiffs' FOIA request and has failed to meet its burden of demonstrating why its cited exemptions apply to the documents it has withheld or redacted. These failures have negatively impacted Plaintiffs' ability to advocate for the conservation and protection of marine mammals. Accordingly, Plaintiffs seek an order compelling prompt and full disclosure of the requested information.

**JURISDICTION AND VENUE**

14.     This Court has both subject matter jurisdiction over this action and personal

jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

15.     Venue is appropriate under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391.

**PARTIES**

16.     Plaintiff Center for Biological Diversity (the "Center") is a 501(c)(3) nonprofit

corporation incorporated in the State of California with over 89,000 active members. The Center

works through science and environmental law to advocate for the protection of endangered,

threatened, and rare species and their habitats, both in the United States and abroad. Through its

Oceans and International programs, the Center has worked for years to protect marine mammals

in the United States and abroad that are threatened by unsustainable or harmful fishing practices,

including through advocacy, litigation, and participation as appointed members of five MMPA-

mandated domestic teams that work to reduce marine mammal mortality and serious injury from

commercial fisheries to a level approaching zero.

17.     Plaintiff National Resources Defense Council, Inc. ("NRDC") is a not-for-profit

membership corporation founded in 1970 and organized under the laws of the State of New

York. NRDC has hundreds of thousands of members and online activists. NRDC has worked for

more than twenty years to implement and enforce the MMPA and to protect marine mammals in

the United States and around the world. NRDC advocates, litigates, participates in teams

mandated by the MMPA, and helps develop policy to reduce marine mammal mortality and

serious injury from commercial fisheries.

18.     Plaintiff Animal Welfare Institute ("AWI") is a nonprofit organization with its

principal place of business in Washington, D.C.  AWI has more than 32,000 members and over

160,000 online activists. Since its founding in 1951, AWI's mission has been to alleviate human-inflicted animal suffering and exploitation by vigorously defending animals' interests through advocacy, research, education and engagement with key stakeholders. AWI engages policymakers, scientists, industry professionals, non-governmental organizations, farmers, veterinarians, teachers, and the public in fulfilling its mission. AWI advocates for the protection and welfare of marine wildlife, including marine mammals, in the United States and throughout the world. AWI promotes increased protections of marine mammals from unsustainable fishing practices around the globe, especially those practices that cause death due to entanglement in fishing gear. AWI regularly prepares and issues fact sheets, peer-reviewed and policy papers, and news alerts to educate its members and online activists about marine wildlife and the threats they face; monitors legislation and research activities that may affect the well-being of marine mammals; and briefs members of Congress and their staff about agency actions, legislation, international developments, and other activities that bear on these issues. AWI members strongly desire increased protections for imperiled marine wildlife to increase the likelihood of species recovery. AWI members purchase and consume or seek to purchase and consume fish caught with minimal impacts to marine mammals.

19.     Defendant National Marine Fisheries Service ("NMFS") is a federal government agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1), with possession and control of the records at issue.

## STATUTORY AND FACTUAL BACKGROUND

### A.    The Freedom of Information Act

20.    Congress passed the Freedom of Information Act ("FOIA") to improve government accountability by requiring the disclosure of qualifying agency records and information.

21.    FOIA requires that "each agency, upon any request for records . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3).

22.    FOIA includes stringent deadlines. Upon receiving a FOIA request, an agency "shall . . . determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) . . . whether to comply with such request and shall immediately notify the person making such request of . . . such determination and the reasons therefor." 5 U.S.C. § 552(a)(6)(A)(i); 15 C.F.R. § 4.6(b).

23.    The twenty-day response period may be extended up to ten working days if the agency provides "written notice . . . setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched." 5 U.S.C. § 552(a)(6)(B)(i); 15 C.F.R. § 4.6(d)(1). "Unusual circumstances" include "the need to search for and collect the requested records from field facilities . . . , the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records . . . , or . . . the need for consultation" with another agency or component of the agency. 5 U.S.C. § 552(a)(6)(B)(iii); 15 C.F.R. § 4.6(d)(2).

24.    Following a determination, the agency "shall . . . ma[k]e" the records "promptly available" to the requester. 5 U.S.C. § 552(a)(6)(C).

25.     FOIA provides this Court jurisdiction "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

26.     The purpose of FOIA is to "open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372 (1976). "FOIA is to be 'construed broadly to provide information to the public in accordance with its purposes' – 'promot[ing] honest and open government' and 'assur[ing] the existence of an informed citizenry to hold the governors accountable to the governed.'" *New York Times Co. v. U.S. Food & Drug Admin.*, 529 F. Supp. 3d 260, 269 (S.D.N.Y. 2021), quoting *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999) (cleaned up). FOIA requests are entitled to a strong presumption in favor of disclosure.

27.     Nothing in FOIA should be read to "authorize withholding of information or limit the availability of records to the public, except as specifically stated." 5 U.S.C. § 552(d). There are nine limited exemptions to FOIA's broad disclosure mandate. *Id.* § 552(b). Agencies bear the burden of justifying the withholding of any records responsive to a FOIA request. *Id.* § 552(a)(4). "FOIA's exemptions must be 'construed narrowly.'" *New York Times Co.*, 529 F. Supp. 3d at 269, quoting *Cuomo*, 166 F.3d at 478.

28.     "'The government bears the burden of demonstrating that an exemption applies to each item of information it seeks to withhold, and all doubts as to the applicability of the exemption must be resolved in favor of disclosure.' . . . Even where an agency's records fall within an enumerated exemption, the agency still must produce any non-exempt portions of the record that are "reasonably segregable" from the exempt portions of the record." *New York*

*Times Co.*, 529 F. Supp. 3d at 269-70, quoting *Florez v. Cent. Intel. Agency*, 829 F.3d 178, 182 (2d Cir. 2016). *See also* 5 U.S.C. § 552(b).

29.     Agencies are prohibited from withholding requested information under FOIA unless the agency reasonably foresees its release will harm an interest that is protected by an exemption. 5 U.S.C. § 552(a)(8)(A).

**B.     MMPA Import Rule**

30.     Congress enacted the MMPA in 1972 to protect marine mammals from human activities, including fisheries bycatch. 16 U.S.C. §§ 1361(1), 1387.

31.     The MMPA sets strict standards for reducing both bycatch and intentional killing of marine mammals in U.S. fisheries. Among other standards, the MMPA sets a goal of reducing "incidental mortality and serious injury of marine mammals" in U.S. fisheries to "insignificant levels approaching a zero mortality . . . rate" by 2001. 16 U.S.C. § 1387(b)(1). The MMPA also generally requires fishers to register with NMFS, monitor and report bycatch, carry an observer if requested, and comply with any relevant plan to reduce bycatch—first to the conservative "potential biological removal" level and then to levels approaching zero mortality. *See id.* § 1387(c)-(f) (setting requirements).

32.     To reduce bycatch in foreign fisheries, the MMPA states that the U.S. government "shall ban" the import of fish and fish products caught in foreign fisheries that kill or injure marine mammals "in excess of United States standards." 16 U.S.C. § 1371(a)(2). NMFS "shall insist on reasonable proof" from foreign governments of "the effects on ocean mammals of the commercial fishing technology in use" for fish or fish products exported from other nations to the United States. *Id.*

33.     To implement the requirements of fish and fish product importation, NMFS published the MMPA Import Rule. 81 Fed. Reg. 54,389 (Aug. 15, 2016). Under the rule, beginning January 2022 no fish product was to be imported into the United States unless NMFS had issued a "comparability finding" for that fishery. 50 C.F.R. §§ 216.24(h)(1), 216.3 (as effective on January 1, 2017).

34.     To receive a comparability finding, foreign governments must submit an application demonstrating that each of their fisheries exporting to the United States meets U.S. standards, including by having a regulatory program for their export fisheries that is "comparable in effectiveness" to the MMPA's regulatory scheme for domestic fisheries. 50 C.F.R. § 216.24(h)(6)(iii)(B).

35.     More specifically, for export fisheries operating within a nation's own Exclusive Economic Zone, the nation must demonstrate that it has a regulatory program providing for stock assessments for marine mammals within its jurisdictional waters that interact with commercial fisheries, a fishing vessel registry including certain information, regulatory requirements for bycatch reporting and mitigation, and monitoring procedures designed to produce statistically reliable estimates of the incidental mortality and serious injury of marine mammal stocks in waters under the nation's jurisdiction resulting from each export fishery and from all export fisheries cumulatively. 50 C.F.R. §§ 216.24(h)(6)(iii)(B), 216.24(h)(6)(iii)(C)(1)-(4). The nation must also calculate bycatch limits for marine mammal stocks under its jurisdiction that are incidentally killed or injured by export fisheries and demonstrate that the export fishery's marine mammal bycatch does not exceed the potential biological removal level or a comparable metric. *Id.* § 216.24(h)(6)(iii)(C)(5)-(6); 16 U.S.C. § 1362(20) (defining "potential biological removal level" as "the maximum number of animals, not including natural mortalities, that may be

removed from a marine mammal stock while allowing that stock to reach or maintain its optimum sustainable population"). Under the rule, NMFS may also issue a comparability finding for an export fishery of a nation whose regulatory program does not include these six components listed in 50 C.F.R. § 216.24(h)(6)(iii)(C)(1)-(6) but which nevertheless "effectively achieves comparable results" as a regulatory program with those requirements. 50 C.F.R. § 216.24(h)(6)(iii)(B).

36.      Under the MMPA Import Rule as originally promulgated, nations' comparability applications were due to NMFS by March 1, 2021. 81 Fed. Reg. 54,389 (Aug. 15, 2016); 50 C.F.R. § 216.24(h)(6)(i) (as effective on January 1, 2017). NMFS was to evaluate the applications and determine whether to issue comparability findings for those foreign fisheries by November 30, 2021, and the import ban for nations that lack a comparability finding was to be effective January 1, 2022. 50 C.F.R. § 216.24(h)(6)(ii). NMFS was also to publish notice of its decisions and any fish or fish products subject to the import ban in the Federal Register. *Id.*

37.      On November 3, 2020, NMFS issued an interim final rule, granting an extension of the exemption period for one year, citing disruption from the global COVID-19 pandemic. 85 Fed. Reg. 69,515. Under the interim final rule, NMFS extended the comparability application deadline to November 30, 2021.

38.      On October 21, 2022, NMFS issued a final rule, revising the prior rule to extend the exemption period by an additional year, until December 31, 2023. 87 Fed. Reg. 63,955.

39.      On November 17, 2023, NMFS issued an additional final rule to again extend the exemption period, this time for two additional years, until December 31, 2025. 88 Fed. Reg. 80,193.

40.     At the time of filing, NMFS has only banned fish and fish product imports based

on bycatch when ordered to through litigation.

**C.     Plaintiffs' FOIA Request**

41.     On February 24, 2022, the Center, NRDC, and AWI jointly submitted a FOIA

request to NMFS seeking

> [T]he full comparability finding applications submitted under the
> Marine Mammal Protection Act Imports Rule, 50 C.F.R.
> § 216.24(h)(6), by the 11 nations listed below. The request includes
> all records submitted with or regarding those applications, including
> all information, documents, emails, and data regarding any export
> fishery. This includes information submitted by nations through the
> NMFS Fisheries International Affairs Information Capture and
> Reporting System (IAICRS), by email, or via any other method. The
> request covers all information submitted as part of the applications,
> including information regarding bycatch, mitigation measures,
> stock assessments, monitoring, and all related attachments and
> supporting documents.

42.     The 11 nations included in the FOIA request were: Canada, Mexico, South

Africa, United Kingdom, India, South Korea, France, Indonesia, Ecuador, Fiji, and Norway.

43.     The same day, Plaintiffs received an automated response from NMFS, confirming

the FOIA submission and assigning to Plaintiffs' FOIA request the tracking number DOC-

NOAA-2022-000848.

44.     On March 9, 2022, NMFS sent a letter acknowledging receipt of Plaintiffs'

request. The letter further stated that the agency was invoking FOIA's 10-day, "unusual

circumstances" extension, claiming the extra time was needed "to search for, collect, and

appropriately examine a voluminous amount" of records. NMFS stated that it "anticipated

responding to [Plaintiffs'] request by April 7, 2022."

45.     On May 16, 2022, having not received any responsive documents, Plaintiffs sent NMFS a letter requesting an update on NMFS's FOIA response, as NMFS's determination and response were significantly overdue.

46.     On May 25, 2022, NMFS sent an email stating it anticipated an "interim release within the next couple of weeks."

47.     On June 10, 2022, NMFS provided a "first interim release" in response to Plaintiffs' FOIA request, releasing 10 records. All 10 records were already otherwise publicly available.

48.     On September 2, 2022, NMFS provided a "second interim release" in response to Plaintiffs' FOIA request, releasing 676 records.

49.     On September 16, 2022, NMFS provided a "third interim release" in response to Plaintiffs' FOIA request, releasing 157 records.

50.     On November 30, 2022, NMFS provided a "fourth interim release" in response to Plaintiffs' FOIA request, releasing 7 records in their entirety, partially redacting 9 records, and withholding 595 records in their entirety.

51.     NMFS's fourth interim response stated, "there are 9 records that are released partially redacted under exemption 5 U.S.C. § 552(7)(a), because they contain commercial or financial information obtained from a person as privileged or confidential."

52.     NMFS's fourth interim response continued, "[t]he remaining 595 records are withheld in their entirety because they contained information that is exempt under 5 U.S.C. § 552(b)(5), which protects information concerning communications within or between agencies and are protected by legal privileges; 5 U.S.C. § 552(b)(6), which protects information that, if

disclosed, would invade another individual's personal privacy; and 5 U.S.C. § 552 (b)(7)(a) which, 'could reasonably be expected to interfere with enforcement proceedings.'"

53.     On January 13, 2023, NMFS provided a "fifth interim release" in response to Plaintiffs' FOIA request, releasing 31 documents in their entirety, partially redacting one record, and providing hyperlinks to 70 documents.

54.     NMFS's fifth response stated, "[t]his is the final release in response to your request, and it is now completed. We are releasing 32 responsive records. Of that 31 documents are being released in their entirety. Additionally, 1 record is released partially redacted under exemption 5 U.S.C. § 552(b)(7) which, 'could reasonably be expected to interfere with enforcement proceedings.' Also, we are providing links to publicly available documents provided to us by Canada[.]"

**D.     Deficiencies in Defendant's FOIA Response**

55.     NMFS has failed to meet the agency's burden of demonstrating that documents (or portions thereof) were lawfully withheld, including describing the information being withheld and why the stated exemptions they identified (in some instances) apply.

56.     In the ten partially redacted documents (nine documents in the fourth response and one document in the fifth response), NMFS redacted two columns of data from what appear to be Excel spreadsheets, including the title of the columns, with no explanation.

57.     For the 595 documents withheld in full, NMFS provided no information or description of the withheld documents, including which nation submitted the document, its date, or the documents' general contents, much less any description of why the claimed exemptions apply.

58.     NMFS unlawfully withheld or redacted documents, as the FOIA exemptions it did cite do not apply.

59.     FOIA Exemption 7 does not apply to the information at issue in Plaintiffs' FOIA request.

    a.  With respect to redacted documents, NMFS claimed that it redacted documents "under exemption 5 U.S.C. § 552(7)(a)" because the documents "contain commercial or financial information obtained from a person as privileged or confidential." However, FOIA Exemption 7(A) addresses law enforcement records, not confidential financial information. 5 U.S.C. § 552(b)(7)(A).

    b.  To the extent NMFS intended to cite to the exemption in 5 U.S.C. § 552(b)(4), which applies to "trade secrets and commercial or financial information obtained from a person and privileged or confidential," for the redacted documents, NMFS did not demonstrate how Exemption 4 applied to any of the redacted documents. NMFS unlawfully withheld the documents under Exemption 4.

    c.  Plaintiffs' FOIA request, seeking comparability finding applications submitted by 11 nations, does not seek trade secrets or commercial or financial information.

    d.  With respect to withheld documents, NMFS failed to demonstrate that the records were "compiled for law enforcement purposes" and that production of the records "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). NMFS unlawfully withheld the documents under Exemption (7)(A).

    e.  NMFS did not collect comparability applications from foreign nations for law enforcement purposes, nor are the records relevant to any enforcement

proceeding. In collecting the comparability applications, NMFS is using its administrative authority to implement a regulatory program.

60.     FOIA Exemption 5 does not apply to the information at issue in Plaintiffs' FOIA request.

    a.  NMFS did not provide any information as to which document(s) Exemption 5 purportedly applies, what those documents are, who authored them, or why Exemption 5 may apply.

    b.  NMFS did not demonstrate how Exemption 5, which allows an agency to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency," applied to any of the redacted or withheld documents. 5 U.S.C. § 552(b)(5). NMFS unlawfully withheld the documents under Exemption (b)(5).

    c.  The "source" of the requested documents here is not a U.S. government agency; it is a foreign country. Thus, the exemption would not apply to any potentially responsive documents.

61.     FOIA Exemption 6 does not apply to the information at issue in Plaintiffs' FOIA request.

    a.  NMFS did not provide any information as to which document(s) Exemption 6 purportedly applies, what those documents are, whose "personal" information is in the documents, or why Exemption 6 may apply.

    b.  NMFS did not demonstrate that any of the withheld documents constituted "personnel and medical files and similar files" whose disclosure "would constitute

a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). NMFS

unlawfully withheld the documents under Exemption (b)(6).

    c.    Again, Plaintiffs' FOIA request sought comparability finding applications

submitted by 11 nations. It is unclear what "personnel and medical files and

similar files" would be responsive to the request. Even if such information was

contained in the response, there is a substantial public interest in the information

that would mandate disclosure, at least in redacted form.

62.    NMFS has not fully disclosed documents responsive to the Plaintiffs' FOIA

request.  NMFS's FOIA response included seven emails that referenced attachments, but no

attachments were included with those emails. As those documents were identified as responsive

to the Plaintiffs' FOIA request, the attachments should have been included in NMFS's response.

**E.**    **Plaintiffs' FOIA Appeal**

63.    Plaintiffs have exhausted the applicable administrative remedies with respect to

their FOIA request to NMFS.

64.    On February 23, 2023, Plaintiffs appealed NMFS's response to their FOIA

request pursuant to 5 U.S.C. § 552(a)(6), articulating their objections to the FOIA response. A

true and accurate copy of the appeal is attached as **Exhibit A**.

65.    NMFS failed to respond to the appeal within twenty working days. 5 U.S.C.

§ 552(a)(6)(A)(ii).

66.    As of the filing of this Complaint, NMFS has failed to respond to the appeal at all.

**F.**    **Plaintiffs' Injury**

67.    The Center, NRDC, and AWI jointly requested the information at issue under

FOIA. Each organization is harmed by NMFS's failure to disclose responsive documents.

Without access to the applications and related materials submitted by the eleven countries pursuant to the MMPA Import Rule, Plaintiffs cannot fully understand how much bycatch is occurring in foreign fisheries that export fish and fish products to the U.S. seafood market. Plaintiffs are further precluded from fully understanding how export nations monitor marine mammal bycatch and how their laws and regulations address this important conservation issue.

68.     The requested information is critical to Plaintiffs and their relevant program operations, as this information will inform Plaintiffs' advocacy, research, and educational programs. Plaintiffs will use the information within the applications to evaluate whether export nations' fisheries are a threat to marine mammal species. Plaintiffs will further use the information to assess whether the nations' applications meet U.S. bycatch standards. The information will also enable Plaintiffs to identify and submit relevant information to NMFS that was not submitted by nations but may inform the agency's forthcoming comparability decisions regarding marine mammal bycatch in foreign fisheries. Plaintiffs will also use the information to inform their members and the public about the threat of bycatch from foreign fisheries that export to the United States, so members can make informed choices about the seafood they purchase.

69.     These interests and activities are adversely affected by NMFS's failure to provide responsive materials in response to Plaintiffs' FOIA request and promptly release the requested applications. This injury will be redressed by a court order compelling NMFS to promptly disclose all responsive records.

## COUNT I
## Failure to Respond to Appeal Within Statutory Timeframe

70.     Plaintiffs reallege and incorporate all preceding allegations in this Complaint as if set forth in full.

71.     Defendant failed to respond to Plaintiffs' FOIA appeal within the statutorily

mandated timeframe, in violation of the Plaintiffs' rights under FOIA. 5 U.S.C.

§ 552(a)(6)(A)(ii).

## COUNT II
## Failure to Produce Responsive Records

72.     Plaintiffs reallege and incorporate all preceding allegations in this Complaint as if

set forth in full.

73.     FOIA provides Plaintiffs a statutory right of access to the records requested in

Plaintiffs' February 24, 2022 FOIA request. 5 U.S.C. § 552.

74.     There is no lawful basis for Defendant's failure to provide all records responsive

to Plaintiffs' FOIA request or for Defendant's withholding of responsive information.

Defendant's failure to disclose information responsive to Plaintiffs' February 24, 2022 FOIA

request violates FOIA. 5 U.S.C. § 552.

75.     The Court should compel production of records–and portions thereof–improperly

withheld. 5 U.S.C. § 552(a)(4)(B).

76.     Plaintiffs are entitled to their reasonable attorneys' fees and costs under 5 U.S.C.

§ 552(a)(4)(E).

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court:

a)     Find that Defendant's failure to timely respond to Plaintiffs' appeal was unlawful;

b)     Order Defendant to promptly provide Plaintiffs with all records responsive to

Plaintiffs' FOIA request;

c)     Award Plaintiffs attorneys' fees and litigation expenses pursuant to 5 U.S.C.

§ 552(a)(4)(E); and

d)      Grant such other and further relief as the Court may deem just and proper.

Dated: April 4, 2024                                Respectfully submitted,

*Attorneys for Natural Resources Defense*
*Council, Center for Biological Diversity,*
*and Animal Welfare Institute*

*/s/ Xavier Q. Lawrence*
_____
Christina S. Marshall (*Pro hac vice pending*)
cmarshall@andersonkreiger.com
Xavier Q. Lawrence (*Pro hac vice pending*)
xlawrence@andersonkreiger.com
ANDERSON & KREIGER LLP
50 Milk, 21st Floor
Boston, MA 02109
Telephone: 617-621-6500
Fax: 617-621-6660

*Attorney for Plaintiff Center for Biological*
*Diversity*

*/s/ Sarah Uhlemann*
_____
Sarah Uhlemann (*Pro hac vice pending*)
suhlemann@biologicaldiversity.org
Center for Biological Diversity
1037 NE 65th Street, #128
Seattle, WA 98115-6655
(206) 327-2344

# EXHIBIT A

February 23, 2023

*Via FOIAOnline.regulations.gov*

Re:    **Freedom of Information Act Appeal regarding DOC-NMFS-2022-000848 (MMPA Imports)**

Dear FOIA Appeals Officer:

The Center for Biological Diversity, Animal Welfare Institute, and Natural Resources Defense Council (collectively "Requesters") hereby appeal the National Marine Fisheries Service's ("NMFS") response to Requesters' Freedom of Information Act ("FOIA") request, DOC-NMFS-2021-000650, including NMFS's November 30, 2022 fourth interim release and January 13, 2023 fifth and final release. As described below, NMFS improperly redacted records under FOIA Exemption 7(A) and improperly withheld records in their entirety under Exemptions 5, 6, and 7(A). 5 U.S.C. § 552(b)(5), (6), (7)(A). NMFS further failed to provide all responsive documents, as the agency failed to include all attachments to responsive email communications. NMFS's response clearly violates FOIA, and the agency's decision should be promptly and fully reversed.

We look forward to your decision on this appeal within 20 working days. 5 U.S.C. § 552(a)(6)(A)(ii). Requesters may pursue legal action if the agency fails to make a timely determination on this appeal, fails to resolve this appeal by immediately providing Requesters with withheld documents, or fails to provide a complete response to our FOIA request.

## BACKGROUND

**A.    FOIA Request and Agency Response**

On February 24, 2022, Requesters submitted a FOIA request via FOIAOnline. *See* Ex. A (copy of request). Requesters sought:

[T]he full comparability finding applications submitted under the Marine Mammal Protection Act Imports Rule, 50 C.F.R. § 216.24(h)(6), by the 11 nations listed below. The request includes all records submitted with or regarding those applications, including all information, documents, emails, and data regarding any export fishery. This includes information submitted by nations through the NMFS Fisheries International Affairs Information Capture and Reporting System (IAICRS), by email, or via any other method. The request covers all information submitted as part of the applications, including information regarding bycatch, mitigation measures, stock assessments, monitoring, and all related attachments and supporting documents.

The 11 nations are:

(1)    Canada
(2)    Mexico
(3)    South Africa
(4)    United Kingdom
(5)    India
(6)    South Korea
(7)    France
(8)    Indonesia
(9)    Ecuador
(10)    Fiji
(11)    Norway

Ex. A.

The same day, NMFS sent an automatically-generated email stating Requesters' fee waiver request had been granted. On March 9, 2022, NMFS acknowledged it received the FOIA request on February 24, 2022, and assigned the FOIA tracking number DOC-NMFS-2022-000848.

NMFS has now provided five "interim" releases of records:

(1)    First interim release on June 9, 2022, releasing 10 records in their entirety;
(2)    Second interim release on September 2, 2022, releasing 676 records in their entirety;
(3)    Third interim release on September 16, 2022, releasing 157 records in their entirety;
(4)    Fourth interim release on November 30, 2022, releasing 7 records in their entirety; partially redacting 9 records, and withholding 595 records in their entirety; and
(5)    Fifth and final release on January 13, 2023, releasing 31 documents in their entirety, partially redacting one record, and providing hyperlinks to 70 documents.

NMFS's fourth interim response stated:

This is the fourth interim release in response to your request. We have located **611** responsive records. Of those, **7** documents are being released in their entirety. Additionally, there are **9** records that are released partially redacted under exemption 5 U.S.C. § 552(7)(a), because they contain commercial or financial information obtained from a person as privileged or confidential.

The remaining **595** records are withheld in their entirety because they contained information that is exempt under **5 U.S.C. § 552(b)(5),** which protects Information concerning communications within or between agencies and are protected by legal

2

privileges, **5 U.S.C. § 552(b)(6)**, which protects information that, if disclosed, would invade another individual's personal privacy, is exempt., and **5 U.S.C. § 552 (b)(7)(a)** which, "could reasonably be expected to interfere with enforcement proceedings."

Ex. B (NMFS's fourth interim response letter).

NMFS's fifth interim response stated:

This is the final release in response to your request, and it is now completed. We are releasing **32** responsive records. Of that 31 documents are being released in their entirety. Additionally, **1** record is released partially redacted under exemption **5 U.S.C. § 552 (b)(7)** which, "could reasonably be expected to interfere with enforcement proceedings." Also, we are providing links to publicly available documents provided to us by Canada[.]

Ex. C (NMFS's fifth and final interim response letter).

Requesters appeal NMFS's response, including the withholdings and partial redactions in its fourth and fifth interim responses.

## B.    FOIA

The purpose of FOIA is to "open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372 (1976). FOIA "mandates a policy of broad disclosure of government documents" and carries a strict disclosure mandate that requires federal agencies to expeditiously disclose requested records to requesters. *See* 5 U.S.C. § 552; *Church of Scientology v. Dep't of the Army*, 611 F.2d 738, 741 (9th Cir. 1980). Consequently, any inquiry under FOIA brings with it a "strong presumption in favor of disclosure. *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991).

To that end, nothing in FOIA should be read to "authorize withholding of information or limit the availability of records to the public, except as specifically stated." 5 U.S.C. § 552(c). Congress recognized that certain records may be exempt from FOIA's broad disclosure mandate in limited instances and created nine exemptions. *Id.* § 552(b). However, these exemptions "must be narrowly construed in light of FOIA's dominant objective of disclosure, not secrecy." *Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1082, 1085 (9th Cir. 1996). Accordingly, because FOIA carries a presumption in favor of disclosure, and because "FOIA requesters face an information asymmetry given that the agency possesses the requested information and decides whether it should be withheld or disclosed," *COMPTEL v. FCC*, 910 F. Supp. 2d 100, 111 (D.D.C. 2012) (citations omitted), agencies bear the burden of justifying the withholding of any records responsive to a FOIA request. 5 U.S.C. § 552(a)(4).

An agency must provide "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *See King v. Dep't of Justice*, 830 F.2d 210,

219 (D.C. Cir. 1987); *see also Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 861 (D.C. Cir. 1980) (holding an agency's disclosure of "who wrote the [document], to whom it was addressed, its date, and a brief description" was "patently inadequate" to establish an exemption under FOIA). Under the FOIA Improvement Act of 2016, agencies are prohibited from denying requests for information under FOIA unless the agency reasonably believes its release will harm an interest that is protected by an exemption. 5 U.S.C. § 552(a)(8)(A).

## ARGUMENT

NMFS's redactions and withholdings are impermissible and should be rejected on appeal. As detailed below, NMFS failed to meet the agency's burden of demonstrating why the exemptions apply, NMFS unlawfully applied FOIA exemptions to withhold or redact documents, and NMFS failed to provide all responsive documents.

### A.    NMFS Failed to Meet its Burden of Establishing that Exemptions Apply

NMFS has not met its burden of demonstrating that any exemptions apply to the withheld information, and therefore the records should be released in full. *See King v. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987) (agency must provide "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply"). NMFS failed to describe the information being withheld; failed to provide any explanation as to why it withheld information or why a FOIA exemption might apply; and failed to even denote which exemption applies to which documents. For example, in the 10 partially redacted documents (9 documents in the fourth response and 1 document in the fifth response), NMFS redacted two columns of data from what appear to be Excel spreadsheets, including the title of the columns, with no explanation. For the 595 documents withheld in full, NMFS provides no information or description of the withheld documents, including which nation submitted the document, its date, or the documents' general contents, much less any description of why the claimed exemptions apply. This utter lack of description is patently inadequate, and the agency's decision to apply any of the exemptions should be overturned. *See id.*; *Coastal States Gas Corp.*, 617 F.2d at 861 ("repeat[ing] in conclusory terms that all the documents fall within one or another of the exemptions" is "patently inadequate" to establish the application of an exemption under FOIA). We address each of the claimed exemptions below, to the extent possible given NMFS's failure to explain its withholdings.

### B.    FOIA Exemptions Do Not Apply

In its fourth interim response, NMFS claims three exemptions: (b)(7)(A), (b)(5), and (b)(6). In its fifth interim response, NMFS claims Exemption (b)(7). None of these exemptions apply, and the agency's decision to withhold the information must be overturned.

### 1.    Exemption 7 Does Not Apply

NMFS claims FOIA Exemption 7 applies both to its partial redaction of the 10 documents and to an undisclosed number of documents withheld in their entirety. However, Exemption 7 does not apply to the information at issue in this FOIA request.

First and most obviously, Exemption 7 does not apply to the 9 redacted documents in NMFS's fourth interim response, as NMFS failed to properly invoke the exemption. NMFS claims the documents are "partially redacted under exemption 5 U.S.C. § 552(7)(a), **because they contain commercial or financial information obtained from a person as privileged or confidential**." *See* Ex. B (emphasis added). As described below, Exemption 7(A) addresses law enforcement records, not confidential financial information; confidential financial information is addressed under FOIA Exemption 4. *See* 5 U.S.C. 5 § 552(b)(7)(A), (b)(4). While NMFS may have mistakenly included the wrong exemption language, the mistake lacks justification and demonstrates a lack of care in preparing the agency's FOIA response.[1]

More broadly, Exemption 7 does not apply to any of the information being withheld. Exemption 7(A) authorizes the withholding of "records or information compiled for law enforcement purposes, but only to the extent that production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).

To qualify for the exemption, NMFS must demonstrate both that (1) the records were "compiled for law enforcement purposes," *and* (2) production of the records "could reasonably be expected to interfere with enforcement proceedings. *See ACLU of N. Cal. v. FBI*, 881 F.3d 776, 778 (9th Cir. 2018) (exemption "protects 'records or information compiled for law enforcement purposes' from disclosure, 'but only to the extent that the production of such law enforcement records . . .' would cause one of six enumerated harms" in Exemption 7(A) –(F)).

### (a)    Withheld/redacted records were not "compiled for law enforcement purposes"

First, to qualify for Exemption 7, NMFS must have compiled the records "for law enforcement purposes." 5 U.S.C. § 552(b)(7). "Law enforcement" is the "detection and punishment of violations of the law." Black's Law Dictionary 964 (9th ed. 2009).

Under longstanding caselaw,  records are for "law enforcement purposes" only if they are "related [to] . . . an enforcement proceeding," whether civil or criminal, and involve "a possible

---

[1] To the degree NMFS intended to invoke Exemption 4, it does not apply. Exemption 4 protects "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4). The requested information—information submitted by foreign nations regarding fisheries, bycatch, and bycatch management—is not "commercial or financial," was not "obtained from a person," and is not "privileged or confidential." *Id.*; *Food Mktg. Inst. v. Argus Leader*, 139 S. Ct. 2356, 2366 (2019) (Exemption 4 only applies when information is confidential, meaning information that is customarily kept private or secret and was given to the government with "assurances" that it would be kept private).

violation of the law." *Jefferson v. Dep't of Justice*, 284 F.3d 172, 177 (D.C. Cir. 2002); *Bartko v. U.S. Dep't of Justice*, 898 F.3d 51, 64 (D.C. Cir. 2018) ("To qualify as law-enforcement records, the documents must arise out of 'investigations which focus directly on specifically alleged illegal acts . . . which could, if proved, result in civil or criminal sanctions.'" (citing *Rural Housing All. v. Dep't of Agric.*, 498 F.2d 73 (D.C. Cir. 1974)); *Tax Analysts v. IRS*, 294 F.3d 71, 78 (D.C. Cir. 2002) ("The *Rural Housing* standard is still good law."); *Birch v. U.S. Postal Serv.*, 803 F.2d 1206, 1210 (D.C. Cir. 1986) (agency must show "connection between [an] individual or incident and a possible . . . violation of federal law"); *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 926 (D.C. Cir. 2003) (pending enforcement proceeding or "likel[ihood of] lead[ing] to such proceedings" required); *Comm. on Masonic Homes of R.W. Grand Lodge v. Nat'l Labor Rel. Bd.*, 556 F.2d 214, 219 (3d Cir. 1977) ("'law enforcement purposes' must relate to some type of formal proceeding"), *overruled by statute*; *Manna v. U.S. Dep't of Justice*, 51 F.3d 1158, 1164 (3d Cir. 1995) (agency must show that a law enforcement proceeding is pending or prospective). Accordingly, "[r]ecords documenting only government surveillance or oversight . . . do *not* qualify" for Exemption 7. *Bartko*, 898 F.3d at 64; *Pratt v. Webster*, 673 F.2d 408, 419 (D.C. Cir. 1982) (courts "dr[a]w a line between general agency oversight (including program monitoring) and agency investigations specifically directed at allegedly illegal activity" (citing *Rural Housing All.*, 498 F.2d at 81–82)).

Moreover, a court would apply heightened scrutiny to NMFS's claim that Exemption 7 applies because NMFS conducts both administrative and law enforcement functions. Caselaw holds that an agency that does not have a clear law enforcement mandate to conduct an investigation cannot invoke Exemption 7. *Weissman v. CIA*, 565 F.2d 692, 696 (D.C. Cir. 1977) (exemption does not apply to CIA investigation records because CIA is statutorily prohibited from conducting domestic law enforcement activities). For agencies with mixed enforcement and administrative functions like NMFS, as opposed to agencies with purely law enforcement functions like the FBI, courts "scrutinize with some skepticism" an agency's claim that records were compiled for law enforcement purposes. *Pratt v. Webster*, 673 F.2d 408, 419 (D.C. Cir. 1982); *Tax Analysts*, 294 F.3d at 71.

While NMFS has some enforcement authority under the MMPA, it is not compiling the requested records under that authority, and thus Exemption 7 is inapplicable. Specifically, the MMPA provides the Secretary of Commerce authority to seek sanctions and conduct enforcement proceedings against "any person who violates" a provision of the MMPA. 16 U.S.C. § 1375. However, NMFS is not compiling the disputed records under this authority. Instead, NMFS is compiling the records pursuant to the MMPA Imports provision, which directs NMFS to "ban the importation" of fish products caught in a way that exceeds U.S. standards and requires NMFS to "insist on reasonable proof" from foreign nations that U.S. standards were met. 16 U.S.C. § 1371(a)(2). Here, Requesters seek the full comparability-finding applications (i.e., the "reasonable proof") that countries submitted under the MMPA Imports Rule. 50 C.F.R. § 216.24(h)(6). Under the Rule, harvesting nations must provide information about their fisheries, fishery regulatory regimes, and bycatch to support a comparability finding if they seek to export fish to the United States. NMFS is not compiling the requested information as part of any enforcement activity; thus, NMFS is not acting under any MMPA "enforcement" function in

compiling the information.[2] *Bartko*, 898 F.3d at 64 (Exemption 7 does not apply because, looking at agency's authority, "[a]bsent from that assignment is any reference to the investigation of criminal wrongdoing or violations of law"). Moreover, when NMFS conducts enforcement, it is through its Office of Law Enforcement, not its Office of International Affairs, Trade, and Commerce, which is the entity compiling the records. Exemption 7 is simply inapplicable to NMFS's compiling of MMPA Imports submissions because NMFS is not collecting the information pursuant to any enforcement authority.

Additionally, NMFS did not and could not meet its burden of demonstrating it compiled the records "for law enforcement purposes." 5 U.S.C. § 552(b)(7). The records are not remotely "related [to] . . . an enforcement proceeding" nor do they involve "a possible violation of the law." *Jefferson*, 284 F.3d at 177. NMFS is not conducting any enforcement proceedings against any nation. The documents simply do not arise out of "investigations which focus directly on specifically alleged illegal" activities. *Bartko*, 898 F.3d at 64 (citing *Rural Housing Alliance v. Dep't of Agric.*, 498 F.2d 73 (D.C. Cir. 1974)).

Instead, NMFS is merely implementing the MMPA Imports provisions and the MMPA Imports Rule. Under the Rule, NMFS requires nations who seek to import fish or fish products into the United States to submit information regarding their export fisheries' bycatch of marine mammals. 81 Fed. Reg. 54,389 (Jan. 1, 2017). This is the information Requesters seek. Using the information submitted by relevant nations, NMFS will issue a determination whether to ban imports of those nations' seafood in a Federal Register notice. This regulatory determination is not "enforcement" of U.S. law against a foreign nation. NMFS is merely using its administrative authority to implement a regulatory program.

If Exemption 7 did cover such everyday administrative decisions and agency activities, it would bar from public release records on a vast array of agency activities in direct contradiction to FOIA's purposes. *ACLU of N. Cal. v. FBI*, 881 F.3d 776, 779 (9th Cir. 2018) ("Our precedents rest on the premise that Exemption 7 cannot be used as 'pretext' to withhold documents related to 'generalized monitoring and information-gathering that are not related to the [agency's] law enforcement duties'"). Exemption 7 is inapplicable to the requested records because NMFS is implementing a regulatory regime, not enforcing the law.

> **(b)     Disclosure of Records Will Not "Interfere with Enforcement Proceedings"**

Under Exemption 7(A), even if NMFS were acting under its enforcement authority and the records were compiled for law enforcement purposes, the records could be withheld "only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). The exemption is designed "to prevent disclosures which might prematurely reveal the government's cases in court, its evidence and strategies, or the nature, scope, direction, and focus

---

[2] The MMPA Imports provision does grant NMFS authority to seek penalties against "any person [who] import[s] . . . any . . . fish or fish product in violation of a ban on importation imposed under" the MMPA Imports provision. 16 U.S.C. 1417(a)(3). However, NMFS is not compiling this information to determine compliance with any ban.

of its investigations, and thereby enable suspects to establish defenses or fraudulent alibis or to destroy or alter evidence." *Maydak v. Dep't of Justice*, 218 F.3d 760, 762 (D.C. Cir. 2000) (citing *Nat'l Labor Rel. Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 241–42 (1978)). Records can only be withheld where the agency can "demonstrate that disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated." *BuzzFeed, Inc. v. Dep't of Justice*, 344 F. Supp. 3d 396, 403 (D.D.C. 2018) (quoting *Citizens for Resp. & Ethics in Wash. v. Dep't of Justice*, 746 F.3d 1082, 1096 (D.C. Cir. 2014)). The government must make a greater showing of interference than a conclusory statement that "the withheld information was clearly related to [an ongoing investigation]." *Campbell v. Dep't of Health & Human Servs.*, 682 F.2d 256, 259 (D.C. Cir. 1982) (alteration in original).

Here, NMFS has not shown and cannot show disclosure of the MMPA Imports information "could reasonably be expected to interfere" with a pending or reasonably anticipated enforcement proceeding. *Campbell*, 682 F.2d at 259. In its fourth interim response, NMFS merely stated that "records are withheld in their entirety because they contained information that is exempt under . . . 5 U.S.C. § 552 (b)(7)(a) which, 'could reasonably be expected to interfere with enforcement proceedings.'" Ex. B. Similarly, in its fifth interim response, NMFS stated that "1 record is released partially redacted under exemption 5 U.S.C. § 552 (b)(7) which, "could reasonably be expected to interfere with enforcement proceedings." NMFS does not identify any pending or anticipated "enforcement proceedings," and it has not suggested the applicant nations are somehow violating U.S. law.[3] Nor can NMFS rely on a general anticipation that some future law enforcement might occur. *ACLU v. Dep't of Def.*, No. CV 18-154-M-DWM, 2019 U.S. Dist. LEXIS 142261, at *26 (D. Mont. Aug. 21, 2019) (finding that government's "general[ ] anticipat[ion] [of] law enforcement involvement" does not adequately support Exemption 7(A)).

Nor can NMFS demonstrate that disclosure of the requested information "could reasonably be expected to interfere" with any enforcement proceeding, were one anticipated here. Requesters seek the "full comparability finding applications submitted under the Marine Mammal Protection Act Imports Rule" by 11 foreign nations. Ex. A. The apparent targets of any potential "enforcement proceeding" —the submitting countries—*already have access* to the information requested *because they submitted it.*

Disclosure of information already known by the target of enforcement does not harm enforcement proceedings. For example, in *Goldschmidt*, the court held the agency had failed to meet its high burden of demonstrating that disclosure of documents already in the possession of targets of an investigation would interfere with law enforcement proceedings. The court rejected the agency's assertion that publicity would interfere with enforcement by making a company less willing to negotiate an informal settlement. *Goldschmidt v. U.S. Dep't of Agric.*, 557 F. Supp. 274 (D.D.C. 1983); *Campbell v. Dep't of Health & Human Servs.*, 682 F.2d 256, 265 (D.C. Cir. 1982) (government must make a very particularized showing of harm or interference to law

---

[3] *See also* 15 C.F.R. § 905.2 ("Enforcement proceeding means any judicial or administrative trial or hearing, initiated for the purpose of imposing any civil or criminal penalty authorized under the Magnuson Act, MMPA, or ESA, including but not limited to, any proceeding initiated to: Impose a monetary penalty; modify, sanction, suspend or revoke a lease, license or permit; secure forfeiture of seized property; or incarcerate an individual.").

enforcement proceedings when the target of the investigation already has access to the requested information); *see also Coastal States Gas Corp.*, 617 F.2d at 870 (refusing to apply Exemption 7(A) when content of documents were "already known to and discussed with the company" subject to enforcement); *Chesapeake Bay Found., Inc. v. Army Corps of Eng'rs*, 677 F. Supp. 2d 101, 108 (D.D.C. 2009) (finding that the agency did not explain "how its investigation will be impaired by the release of information that the targets of the investigation already possess").

Here, the Requesters are seeking information provided by the supposed "target" of NMFS's "investigation," if NMFS were conducting one. The target of this purported investigation (i.e., the nation) has access to the documents requested because it (the nation) provided the documents. NMFS cannot demonstrate that disclosure of the requested documents would harm its ongoing regulatory process, and the agency cannot withhold any of the documents pursuant to Exemption 7(A).

Finally, and as noted above, NMFS failed to justify its 7(A) withholdings. In its fourth and fifth interim responses, NMFS merely stated that it was withholding and redacting records under Exemption 7(A) because they "could reasonably be expected to interfere with enforcement proceedings." This "explanation" is a conclusory statement that fails to establish how disclosure would interfere with any law enforcement proceedings. *See Campbell*, 682 F.2d at 259; *Citizens for Resp.*, 746 F.3d 1082 at 1098 (remanding for further fact finding because "it is not sufficient for the agency to simply assert that disclosure will interfere with enforcement proceedings; 'it must rather demonstrate how disclosure' will do so"); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1114 (D.C. Cir. 2007) (finding that an agency must demonstrate how disclosure would reveal the focus of an investigation); *Campbell v. Health & Human Serv.*, 682 F.2d 256, 259 (D.C. Cir. 1982) (holding that the government must show "how the particular kinds of investigatory records requested would interfere with a pending enforcement proceeding").

In sum, NMFS improperly withheld the records pursuant to Exemption 7(A) and must now release the records to Requesters in full.

## 2.      Exemption 5 Does Not Apply

In its fourth interim response, NMFS claims FOIA Exemption 5 applies to an undisclosed number of documents withheld in their entirety. Exemption 5 does not apply to the documents, and the documents should be released in full.

NMFS fails to justify its Exemption 5 withholdings. NMFS's fourth interim response provides no details as to which documents Exemption 5 purportedly applies, what those documents are, who authored them, or why Exemption 5 may apply to those documents. NMFS has not met its burden of demonstrating that any exemptions apply to the withheld records, and the records should therefore be released in full. *See Coastal States Gas Corp.*, 617 F.2d at 861 ("repeat[ing] in conclusory terms that all the documents fall within one or another of the exemptions" is "patently inadequate" to establish the application of an exemption). However, to the limited degree possible given the lack of information available to Requesters, we maintain that Exemption 5 does not apply.

Exemption 5 allows the agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Courts have interpreted the language to "exempt . . . only those documents that are normally privileged in the civil discovery context." *Nat'l Labor Rel. Bd. v. Sears Roebuck & Co.*, 421 U.S. 132, 149 (1975). To qualify for the exemption, (1) the "source [of the document] must be a Government agency," and (2) "it must fall within the ambit of a privilege against discovery." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8, 1065 (2001)

First, the requested records—"comparability finding applications submitted . . . by . . . 11 nations," Ex. A—are not "inter-agency or intra-agency" communications because "the source" of the records is not "a Government agency." *Klamath Water Users*, 532 U.S. at 9. An "agency" is an "authority of the Government *of the United States*." *Id.* (emphasis added) (citing 5 U.S.C. 551(1)). Accordingly, "the most natural meaning of the phrase 'intra-agency memorandum' is a memorandum that is addressed both to and from employees of a single agency." *Klamath Water Users*, 532 U.S. at 9. Here, the documents requested are not memorandum "to and from" NMFS employees, and thus Exemption 5 flatly does not apply.

Second, no "privilege against discovery" applies to the document, including attorney-client privilege, attorney work-product privilege, or deliberative process.

If NMFS is claiming attorney-client privilege over the requested documents, the privilege does not apply. The privilege is narrow:

> The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services. . . . The privilege also protects communications from attorneys to their clients if the communications "rest on confidential information obtained from the client."

*Tax Analysts v. IRS*, 117 F.3d 607, 618 (1997) (citing *In re Sealed Case*, 737 F.2d 94, 98–99 (D.C. Cir. 1984)); *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 253 (1977); *Zander v. Dep't of Justice*, 885 F. Supp. 2d 1, 15 (D.D.C. 2012) (holding that attorney-client privilege should be given "same meaning" in "both the discovery and FOIA contexts").

Attorney-client privilege does not cover the requested records. Requesters sought "comparability finding applications submitted . . . by . . . 11 nations." Ex. A. Any attorney-client relationship is held between *the agency and its counsel*. Documents submitted by a third party (the foreign nations) are not covered by that relationship. *See Mead Data*, 566 F.2d at 253. The privilege would not apply even if the agency sought its counsel's advice on information the nations submitted. *See Schlefer v. United States*, 702 F.2d 233, 245 (D.C. Cir. 1983) (finding "factual information" contained in agency document was "not provided by the 'client'—the Agency official who solicits the . . . Counsel's advice—but by a third party—the outsider who seeks a ruling from the Agency. The outsider's communications to the official do not contain confidential information *concerning the agency*," and privilege does not apply); *Coastal States Gas Corp*, 617 F.2d at 863 (rejecting privilege for agency "communicat[ions] to the attorneys . . . in the course of auditing third parties[']" compliance because the communications "do not

contain private information concerning the agency. Rather than 'counseling,' intended to assist the agency in protecting its interests, the memoranda here seem to be neutral, objective analyses of agency regulations.").

Moreover, attorney-client privilege only covers "confidential" information; "[i]f the information has been or is later shared with third parties, the privilege does not apply." *Tax Analysts v. IRS*, 117 F.3d 607, 619 (D.C. Cir. 1997). Any documents responsive to FOIA that contain a communication between NMFS and a third-party nation—even if NMFS's attorneys are on the communication—are not protected, as the communications were shared with a third party.[4]

If NMFS is claiming deliberative process privilege over the requested documents, the privilege does not apply. To qualify as deliberative, the agency must demonstrate (1) the communication is "predecisional," i.e., generated before the agency makes its decision, and (2) the communication is "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975). The privilege is "designed to protect subordinates' advice to superiors" *Id.* at 1146; *Coastal States Gas Corp.*, 617 F.2d at 868. Moreover, the deliberative privilege "applies only to the 'opinion' or 'recommendatory' portion of the report, not to factual information which is contained in the document." *Id.* at 867.

Deliberative process does not cover the requested records. Requesters sought "comparability finding applications submitted . . . by . . . 11 nations." Ex. A. Foreign nations' applications are not U.S. agency documents that "make[ ] recommendations or express[ ] opinions on legal or policy matters." *See Ctr. for Int'l Envtl. Law v. Office of the U.S. Trade Representative*, 237 F. Supp. 2d 17, 27 (D.D.C. 2002) (denying deliberative process over documents submitted by Chile in trade negotiation because Chile "was an advocate for its own interests and not a provider of independent advice to the United States"). Moreover, to the degree responsive documents contain any recommendations that actually qualify as deliberative process, those recommendations must be redacted and the remaining portions of document released.

In sum, FOIA Exemption 5 does not apply to the documents, and the documents must be released in full.

### 3.    Exemption 6 Does Not Apply

In its fourth interim response, NMFS claims FOIA Exemption 6 applies to an undisclosed number of documents withheld in their entirety. Exemption 6 does not apply to the documents, and the documents should be released in full.

First, as with NMFS's other claimed exemptions, NMFS failed to justify its Exemption 6 withholdings. NMFS's fourth interim response provides no details as to which documents Exemption 6 purportedly applies, what those documents are, whose purportedly "personal"

---

[4] Nor does attorney work-product privilege apply. The privilege only shields materials "prepared in anticipation of litigation." *Tax Analysts*, 117 F.3d at 620. Because the agency has not even determined whether the nations' applications will be granted, it cannot be anticipating litigation at this point.

information is in the documents, or any explanation as to why Exemption 6 may apply. NMFS has not met its burden of demonstrating that the exemption applies to the withheld records, and the records should therefore be released in full. *See Coastal States Gas Corp.*, 617 F.2d at 861 ("repeat[ing] in conclusory terms that all the documents fall within one or another of the exemptions" is "patently inadequate" to establish the application of an exemption).

However, to the degree possible given the lack of information available to Requesters, we maintain that Exemption 6 does not apply. FOIA Exemption 6 only allows withholding of "personnel and medical files and similar files" when disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). In applying the exemption, courts consider (1) whether the information is personnel, medical, or similar; (2) if there is a substantial privacy interest in the information; (3) the public interest in disclosing the information; and (4) a balance of the competing interests. *Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 261 (D.C. Cir. 1982). Because Exemption 6 only applies when disclosure is "clearly unwarranted," courts "tilt the balance" of interests "in favor of disclosure." *Id.*

Here, Exemption 6 does not apply to the requested documents. Requesters seek "comparability finding applications submitted . . . by . . . 11 nations." Ex. A. It is unclear what "personnel and medical files and similar files" would be responsive to the request. To qualify for Exemption 6, information must "appl[y] to a particular individual." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982). The exemption does not apply to information regarding government employees that is business in nature, rather than personal. For example, "information that merely identifies the names of government officials who authored documents and received documents' does not generally fall within Exemption 6." *Fams. for Freedom v. U.S. Customs & Border Prot.*, 797 F. Supp. 2d 375, 388–89 (S.D.N.Y. 2011) (citing *Aguirre v. SEC*, 551 F. Supp. 2d 33, 54 (D.D.C. 2008) ("Correspondence does not become personal solely because it identifies government employees.")).

Further, even if the responsive information does somehow qualify as personnel, medical, or similar, there is a substantial public interest in the information. *Wash. Post*, 456 U.S. at 602. Requesters seek comparability-finding applications submitted under the MMPA Imports Rule. Ex. A. Under that Rule, NMFS uses this information to determine whether nations' bycatch programs meet U.S. standards and thus whether the nations may continue exporting seafood to the United States. Requesters and the broader public have a substantial interest in the information, including marine mammal population monitoring, bycatch statistics, and nations' regulatory programs, as well as whether these nations' applications support a finding that their fish and fish products meet U.S. standards. It is entirely unclear what privacy interest is the information implicates, and thus the balance tilts strongly in favor of disclosure of the documents. *Wash. Post*, 690 F.2d at 261. FOIA Exemption 6 simply does not apply. Moreover, if the responsive documents contain truly personal information, that information can be redacted and the remaining document released in full.

**C.      NMFS Failed to Provide All Responsive Documents**

In reviewing NMFS's FOIA response, Requesters identified seven emails that referenced attachments. However, no attachments were included with those emails, and it is unclear whether the attachments were provided separately from those emails. These emails and referenced attachments are:

(1)     Document 11215. Email from Lauren Fields to Suzanne Ludicello referencing attachments: application of Fiji and Faroes Island;

(2)     Document 11521. Email from MMPA LOFF - NOAA Service Account to Shri. Anil Kumar P referencing two attachments: India trade data.pdf, 2021_tech consult_India.pdf;

(3)     Document 11671. Email from Lauren Fields to Nina Young referencing attachment: Agenda for Meeting with GARFO_LF.docx;

(4)     Document 12004: Email from Lauren Fields to Nina Young referencing attachment Questions from Canada for N...;

(5)     Document 12655:  Email from Nina Young to Kellie Foster-Taylor referencing attachment Agenda for Meeting with GARFO and OPR with NOTES.docx;

(6)     Document 12682:  Email from Kellie Foster-Taylor to Nina Young referencing attachment Notes from Meeting with GARFO and OPR.docx; and

(7)     Document 12902: Email from Kellie Foster-Taylor to Nina Young referencing attachment Notes from Meeting with GARFO and OPR_LF.docx).

NMFS identified these documents as responsive to the FOIA request. We request that either the agency be directed to clarify whether it provided those attachments or, if it did not provide the attachments, the agency be directed to do so.

**CONCLUSION**

No FOIA exemptions apply to the requested records, and NMFS must release all responsive information in full. We urge you to immediately reject NMFS's determination to withhold responsive information and direct NMFS to promptly release the information in full.

We look forward to your decision on this appeal within 20 working days. 5 U.S.C. § 552(a)(6)(A)(ii). Requesters may pursue legal action if the agency fails to timely make a determination on this appeal, fails to resolve this appeal by providing Requesters with withheld information, or fails to provide a complete response to our FOIA request.

Sincerely,

Sarah Uhlemann                              Zak Smith
International Program Director and          Senior Attorney & Director, International
    Senior Attorney                             Wildlife Conservation
Center for Biological Diversity             Natural Resources Defense Council
1037 NE 65th Street, #128                   317 E Mendenhall Street, Suite D

Seattle, WA 98115-6655                     Bozeman, MT 59715
(206) 327-2344                             (406) 556-9305
suhlemann@biologicaldiversity.org          zsmith@nrdc.org